UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALPHA INDUSTRIES, INC., | |
| Plaintiff, | |
| -v.- | 21 Civ. 87 (KPF) |
| ALPHA CLOTHING CO. LLC and RYAN "TANNER" MUELLER, | **OPINION AND ORDER** |
| Defendants. | |

KATHERINE POLK FAILLA, District Judge:[1]

Plaintiff Alpha Industries, Inc. filed this action against Defendants Alpha Clothing Co. LLC ("Alpha Clothing") and Ryan "Tanner" Mueller (collectively, "Defendants"), asserting claims of trademark infringement, unfair competition and false designation of origin, and trademark dilution in violation of Sections 32, 43(a), and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c), as well as claims of trademark infringement, unfair competition, and willful misappropriation in violation of the common law of the State of New York and other states where Alpha Clothing has sold allegedly infringing apparel. Defendants have responded by moving to transfer this action to the United States District Court for the District of Kansas. For the reasons set forth in this Opinion, Defendants' motion is granted, and the Court transfers this case to the District of Kansas.

---

[1] Benjamin C. Klein, a rising second-year student at the University of Chicago Law School and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

## A. Factual Background

Plaintiff Alpha Industries, Inc., a Tennessee corporation headquartered in Virginia, owns the rights to a number of federally registered trademarks and service marks that include the terms "Alpha" and "Alpha Industries." (Compl. ¶¶ 1, 8-9). Plaintiff also retains common law rights in these marks for use in connection with apparel, bags, and other products. (*Id.* at ¶ 10). Plaintiff's registered and common law trademarks are collectively referred to as the "ALPHA Marks." (*Id.*). For more than 60 years, Plaintiff and its predecessors in interest, associated companies, and authorized licensees have sold "high quality military-inspired and sport casual apparel and other products" bearing the ALPHA Marks. (*Id.* at ¶ 11). Plaintiff's promotions and advertisements for its products prominently feature the ALPHA Marks. (*Id.* at ¶ 14).

Defendant Alpha Clothing, an online-only retailer of fitness apparel, is both incorporated and headquartered in Kansas. (Mueller Decl. ¶¶ 2, 4).

---

[2] The facts contained in this Opinion are drawn from Plaintiff's Complaint (or "Compl." (Dkt. #1)), as well as the declarations submitted by the parties in connection with the instant motion, and the exhibits attached thereto. *See Mohsen* v. *Morgan Stanley & Co. Inc.*, No. 11 Civ. 6751 (PGG), 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) ("In deciding a motion to transfer, a court may consider material outside of the pleadings." (collecting cases)); *see also infra* Discussion Sec. A. The Declaration of Ryan Mueller submitted in support of Defendants' motion is referred to as "Mueller Decl." (Dkt. #20-3); the Declaration of Anthony Yarborough submitted in opposition to Defendants' motion is referred to as "Yarborough Decl." (Dkt. #39), and the appended exhibits are referred to as "Yarborough Decl., Ex. [ ]"; and the Declaration of Joel G. MacMull submitted in opposition to Defendants' motion is referred to as "MacMull Decl." (Dkt. #40), and the appended exhibits are referred to as "MacMull Decl., Ex. [ ]".

For convenience, Defendants' opening memorandum is referred to as "Def. Br." (Dkt. #20-1), and the appended exhibit is referred to as "Def. Br., Ex. 1"; Plaintiff's opposition memorandum is referred to as "Pl. Opp." (Dkt. #38); and Defendants' reply memorandum is referred to as "Def. Reply" (Dkt. #42).

Defendant Mueller is a resident of Kansas and Alpha Clothing's founder, sole owner, and Chief Executive Officer. (*Id.* at ¶ 1). Over the past two years, Alpha Clothing has sold apparel through its website to consumers in all fifty states and abroad. (*Id.* at ¶ 5). Alpha Clothing's website, apparel, and packaging are branded with its logo, which consists of a stylized "Alpha." (*See* Yarborough Decl., Ex. 1-6 (screenshots and photographs of Alpha Clothing receipts, apparel, and packaging)). The Alpha Clothing apparel and other products at issue in this litigation are designed and developed at its headquarters in Overland Park, Kansas, and manufactured in China. (Mueller Decl. ¶¶ 8, 11). Aside from its Kansas headquarters, Alpha Clothing's only other physical location is an inventory storage facility located in North Kansas City, Missouri. (*Id.* at ¶ 7).

Plaintiff alleges that Defendants have manufactured, imported, distributed, offered for sale, and/or sold products bearing the ALPHA Marks through the Alpha Clothing website. (Compl. ¶¶ 16-17). Plaintiff further alleges that these products were sold and distributed without its approval. (*Id.* at ¶ 18). In March 2020, Plaintiff sent Defendants a written demand to cease and desist the manufacture, distribution, and sale of their allegedly infringing products. (*Id.* at ¶ 16). Since receiving Plaintiff's demand, Defendants have continued to advertise, market, distribute, and sell products allegedly bearing the ALPHA Marks. (*Id.*). Plaintiff alleges that Defendants' use of the ALPHA Marks is likely to cause — and has caused — confusion, mistake, and deception by and among consumers. (*Id.* at ¶ 19).

3

## B.     Procedural Background

On January 5, 2021, Plaintiff commenced this action with the filing of a Complaint alleging trademark infringement and dilution, unfair competition and false designation of origin, and willful misappropriation.  (Dkt. #1). Following a dispute over the deadline for Defendants' response to the Complaint (*see* Dkt. #12-14), Defendants failed to submit a timely response, and Plaintiff sought and was granted a Certificate of Default (Dkt. #19).  On March 5, 2021, Defendants filed the instant motion to transfer the venue of this action to the District of Kansas.  (Dkt. #20).[3]

The Court subsequently ordered the parties to appear for a conference on March 11, 2021.  (*See* Dkt. #36 (transcript)).  After hearing from the parties, the Court vacated the Clerk's Certificate of Default and set a schedule for further briefing on Defendants' motion to transfer venue.  (*See id.*; *see also* Dkt. #27 (March 12, 2021 Order)).  Pursuant to the Court's briefing schedule, on April 16, 2021, Plaintiff filed its opposition to Defendants' motion and accompanying declarations (Dkt. #38-40), as well as a request for oral argument (Dkt. #41).[4]  Defendants then filed a reply on April 30, 2021, concluding briefing on the motion.  (Dkt. #42).

---

[3]     Defendants' opening brief fails to comply with Rule 4.B of this Court's Individual Rules of Practice, which requires that a table of contents and table of authorities be included in any memorandum of law greater than ten pages.  While the Court considers the arguments discussed therein, it advises Defendants to ensure their future submissions adhere to the transferee court's applicable rules.

[4]     Although the Court appreciated Plaintiff's willingness to appear for oral argument, it determined that oral argument was not necessary to resolve the instant motion.

**DISCUSSION**

**A.  Applicable Law**

Defendants challenge the appropriateness of venue in the Southern District of New York under the federal change of venue statute, 28 U.S.C. § 1404.[5]  Subsection (a) of that statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  *Id.* § 1404(a).  In making determinations of convenience under § 1404(a), district courts have "broad discretion" to consider "notions of convenience and fairness … on a case-by-case basis."  *D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

A motion to transfer pursuant to § 1404(a) requires a two-step inquiry.  *See Nuss* v. *Guardian Life Ins. Co. of Am.*, No. 20 Civ. 9189 (MKV), 2021 WL

---

[5]   In their opening brief, Defendants submit that they object to venue under both § 1404(a) and Rule 12(b)(3) of the Federal Rules of Civil Procedure.  (Def. Br. 1).  Rule 12(b)(3) provides that a defendant may move to dismiss a complaint on the grounds of improper venue.  *See* Fed. R. Civ. P. 12(b)(3).  However, the substance of Defendants' briefing is tailored to the application of § 1404(a), and Defendants do not address the requirements of a Rule 12(b)(3) motion, or otherwise argue that venue is improper such that dismissal under Rule 12(b)(3) is required.  (*See, e.g.*, Def. Br. 5-6 (discussing legal standard for § 1404(a))).  The Court recognizes that in the context of a motion to dismiss under Rule 12(b)(3), the plaintiff has the burden of pleading venue.  *Person* v. *Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).  In its opposition brief, Plaintiff observes that Defendants' opening briefing is devoid of any discussion of Rule 12(b)(3) (Pl. Opp. 1), but nonetheless argues that venue is proper in this District (*id.* at 2 n.2).  Defendants do not respond to these arguments in their reply brief, but instead maintain only that the District of Kansas is the "*more* appropriate and convenient venue" when compared to this District.  (Def. Reply 1 (emphasis added)).  The Court understands Defendants to have abandoned any arguments that venue is improper, and will thus address Defendants' motion to transfer pursuant to § 1404(a), rather than Rule 12(b)(3).  *See generally Jones* v. *Cuomo*, No. 20 Civ. 4898 (KPF), 2021 WL 2269551, at *5 n.2 (S.D.N.Y. June 2, 2021) (collecting cases for proposition that silence on argument amounts to concession on or abandonment of argument).

1791593, at *2 (S.D.N.Y. May 5, 2021). In undertaking this analysis, courts must first determine if the action "might have been brought in the district to which transfer is sought." *Smart Skins LLC* v. *Microsoft Corp.*, No. 14 Civ. 10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks and citation omitted). A case might have been brought in another forum "if 'at the time the suit was brought, the defendants were subject to jurisdiction and venue was proper' in that district." *Id.* (quoting *Giuliani, S.p.A.* v. *Vickers, Inc.*, 997 F. Supp. 501, 502 (S.D.N.Y. 1998)).

Second, the court must determine "whether convenience of the parties and witnesses and the interests of justice favor transfer." *CVS Pharmacy, Inc.* v. *AstraZeneca Pharms. L.P.*, No. 19 Civ. 9999 (CM), 2020 WL 4671659, at *4 (S.D.N.Y. Aug. 12, 2020). In conducting this inquiry, courts generally consider the following non-exhaustive list of factors, including:

> [i] the convenience of the witnesses, [ii] the convenience of the parties, [iii] the location of relevant documents and the relative ease of access to sources of proof, [iv] the locus of operative facts, [v] the availability of process to compel the attendance of unwilling witnesses, [vi] the relative means of the parties, [vii] the forum's familiarity with governing law, [viii] the weight accorded to plaintiff's choice of forum, and [ix] trial efficiency and the interests of justice, based on the totality of the circumstances.

*Fuji Photo Film Co.* v. *Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006). However, "[t]here is no rigid formula for balancing these factors and no single one of them is determinative." *Larew* v. *Larew*, No. 11 Civ. 5771 (BSJ) (GWG), 2012 WL 87616, at *3 (S.D.N.Y. Jan. 10, 2012) (citing *Citigroup Inc.* v. *City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (internal quotation

marks and citations omitted)).  And, "[i]n considering these factors, the court may consider factual material outside the pleadings."  *Power Play 1 LLC* v. *Norfolk Tide Baseball Club, LLC*, No. 17 Civ. 4831 (WHP), 2018 WL 357304, at *4 (S.D.N.Y. Jan. 9, 2018) (collecting cases); *see also Citibank, N.A.* v. *Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003) (noting that a defendant may "support [a Section 1404(a)] motion with affidavits and other materials outside the pleadings").

As a general matter, a "[p]laintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of a transfer[.]" *MasterObjects, Inc.* v. *Amazon.com, Inc.*, No. 20 Civ. 3478 (PKC), 2020 WL 6075528, at *1 (S.D.N.Y. Oct. 15, 2020); *see also Lykes Bros. Steamship Co.* v. *Sugarman*, 272 F.2d 679, 681 (2d Cir. 1959) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (internal quotation marks omitted)).  The moving party thus bears the burden of making "a clear and convincing showing that the balance of convenience favors defendant['s] choice" of forum.  *MasterObjects, Inc.*, 2020 WL 6075528, at *1 (internal quotation marks omitted) (alteration in *MasterObjects*) (quoting *Hubbell Inc.* v. *Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995)); *see also N.Y. Marine & Gen. Ins. Co.* v. *Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010) ("Although we have never explicitly approved a district court's use of the 'clear and convincing evidence' standard in ruling on a motion to transfer venue, the propriety of that standard to transfer-motions is evident.").  Where the moving party makes such a showing,

7

the Court may transfer the matter in the interest of justice. *Garcia* v. *Pearson Educ., Inc.*, No. 15 Civ. 7289 (KPF), 2016 WL 5921083, at *5 (S.D.N.Y. Oct. 7, 2016) (citing *Solar* v. *Annetts*, 707 F. Supp. 2d 437, 441-42 (S.D.N.Y. 2010)).

**B.      Analysis**

       **1.      This Action Could Have Been Brought in the District of Kansas**

As noted above, a case might have been brought in the District of Kansas "if 'at the time the suit was brought, the defendants were subject to jurisdiction and venue was proper' in that district." *Smart Skins LLC*, 2015 WL 1499843, at *4 (quoting *Giuliani, S.p.A.*, 997 F. Supp. at 502). Plaintiff does not dispute that this action could have been brought in the District of Kansas. (Pl. Opp. 5). And the Court submits that there would be no basis for such a dispute. *First*, Defendants are subject to the jurisdiction of the District of Kansas, as Mr. Mueller resides in Kansas and Alpha Clothing is headquartered in Kansas. (Compl. ¶¶ 2-3). *See Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (observing that individual defendants are subject to general jurisdiction in the state in which they reside, while corporate defendants are subject to general jurisdiction in their place of incorporation and principal place of business); *see also Everlast World's Boxing Headquarters Corp.* v. *Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) ("Because both [defendants] reside in Kansas, venue would be proper in the District of Kansas."). Moreover, Defendants have also "impliedly consented to personal jurisdiction" in the District of Kansas by moving to transfer venue to that District. *Nuss*, 2021 WL 1791593, at *2.

*Second*, the District of Kansas possesses subject matter jurisdiction over this action, as Plaintiff's Complaint brings claims pursuant to federal trademark law. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). And *third*, venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction." *Id.* § 1391(b)(3). The Court is satisfied that this action could have been brought in the District of Kansas, and will turn to consideration of whether convenience of the parties and witnesses and the interests of justice favor transfer.

**2.      Transfer to the District of Kansas Is Appropriate**

As previewed above, courts generally consider nine factors in determining whether notions of convenience and fairness favor transfer. The Court will discuss each of these factors in turn, after categorizing them into factors favoring transfer, neutral factors, and factors weighing against transfer. After analyzing these factors, the Court concludes that, in light of the totality of the circumstances, transfer of venue to the District of Kansas is warranted in the interest of justice.

**a.      Factors Favoring Transfer**

The following factors favor transfer of venue: (i) the convenience of witnesses and parties; (ii) the locus of operative facts; and (iii) trial efficiency and the interests of justice.

### i.     The Convenience of Witnesses and Parties

"The convenience of parties and witnesses is considered the essential criteri[on] under the venue statute." *Starr Indem. & Liab. Co.* v. *Brightstar Corp.*, 324 F. Supp. 3d 421, 437 (S.D.N.Y. 2018) (alteration in *Starr*) (internal quotation marks omitted) (quoting *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998)).  "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Steck* v. *Santander Consumer USA Holdings Inc.*, No. 14 Civ. 6942 (JPO), 2015 WL 3767445, at *3 (S.D.N.Y. June 17, 2015) (quoting *Liberty Mut. Ins. Co.* v. *Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014) (citation and internal quotation marks omitted)).  And the convenience of the parties is "often connected to the convenience of their respective witnesses," as "when one party's witnesses are severely inconvenienced or, worse yet, unavailable because of an inability to compel attendance, the party itself is severely inconvenienced." *ESPN, Inc.* v. *Quiksilver, Inc.*, 581 F. Supp. 2d 542, 549-50 (S.D.N.Y. 2008).

In this matter, the majority of potential witnesses either reside in or are in the vicinity of Kansas.  Defendants identify five potential witnesses, including Defendant Mueller, all of whom are employees of Alpha Clothing and reside within a "few miles" of the District Court for the District of Kansas.  (Mueller Decl. ¶¶ 1, 13; Def. Br. 2).  In opposition, Plaintiff identifies two party witnesses — its Chief Financial Officer and Director of Business Intelligence —

both of whom reside in Virginia. (MacMull Decl. ¶ 5). Plaintiff has also identified a non-party New York-based potential witness, Anthony Yarborough, a private investigator whose company Plaintiff retained to make purchases from Alpha Clothing's website. (*See* Yarborough Decl. ¶¶ 3, 6-8).

While the "greater relative quantity of Kansas-based witnesses alone favors transfer," it is not dispositive. *See Everlast*, 928 F. Supp. 2d at 744. To that end, Plaintiff argues that the fact that Mr. Yarborough "lives and works in this district" outweighs the inconvenience to Defendants' party witnesses. (Pl. Opp. 8). The Court recognizes that "the convenience of non-party witnesses is accorded more weight than that of party witnesses." *ESPN, Inc.*, 581 F. Supp. 2d at 547 (citation and internal quotation marks omitted); *see also Pecorino* v. *Vutec Corp.*, 934 F. Supp. 2d 422, 436-37 (E.D.N.Y. 2012) (collecting cases observing that the inconvenience of party witnesses and employees does not weigh as heavily as inconvenience to non-party witnesses). But Plaintiff's argument is nonetheless unavailing. *First*, the five Kansas-based witnesses are the "most critical witnesses" in this action, as they include "officers and employees who were involved in the design, production, and sale of the [allegedly infringing] products[.]" *ESPN, Inc.*, 581 F. Supp. 2d at 548 (internal quotation marks omitted) (quoting *AEC One Stop Grp., Inc.* v. *CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004)). (*See* Mueller Decl. ¶ 13 (describing the potential testimony of Alpha Clothing's employees)). The

materiality of the potential Kansas-based witnesses' testimony justifies according considerable weight to their convenience.[6]

*Second*, both Defendants and their witnesses would find Kansas a substantially more convenient forum — while only a single witness of Plaintiff's would find New York a substantially more convenient forum. *See Smart Skins LLC*, 2015 WL 1499843, at *7 (noting that the witness convenience factor "strongly favor[ed] transfer" where transfer was more convenient for the majority of witnesses and the remaining witnesses would find neither forum more convenient). Plaintiff and its Virginia-based witnesses will be required to travel whether this action proceeds in this District or the District of Kansas. While Plaintiff argues that it is "substantially more convenient" for its Virginia-based witnesses to travel to New York than to Kansas (Pl. Opp. 8), it has not submitted any evidence demonstrating the relative difficulty of traveling to the District of Kansas for its witnesses. *See Jacobsen* v. *Dhundale*, No. 15 Civ. 6677 (KBF), 2016 WL 94256, at *2 (S.D.N.Y. Jan. 7, 2016) (rejecting arguments that plaintiff and witnesses would be inconvenienced by transfer of venue where plaintiff failed to proffer affidavits attesting to the difficulty of travel to

---

[6]     Moreover, given that the Kansas-based witnesses comprise the entire staff of Alpha Clothing, retaining venue in this District may be disruptive to Alpha Clothing's operations. (*See* Mueller Decl. ¶¶ 13-15). *Cf. Steck* v. *Santander Consumer USA Holdings Inc.*, No. 14 Civ. 6942 (JPO), 2015 WL 3767445, at *4 (S.D.N.Y. June 17, 2015) (observing that in securities-fraud actions, "[s]ome courts have considered the fact that individual defendants 'form the core of [the company's] senior management,' and that transfer to the district in which the issuer has its headquarters may reduce the 'risk of disrupting company operations'" (second alteration in *Steck*) (quoting *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006))).

the transferee forum).[7]  Although the Court recognizes that there are a number of airports in close proximity to this District, *see CYI, Inc.* v. *Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 24 (S.D.N.Y. 2012) ("*CYI*"), the District of Kansas is also serviced by several airports.  And in any event, Plaintiff's arguments do not "negate the convenience that would, on balance, be gained by transfer of this action." *Id.* (finding that the party convenience factor favored transfer despite the fact "that New York City is at least marginally easier to travel to based on the number of airports servicing the region"); *see also Neil Bros. Ltd.* v. *World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 328 (E.D.N.Y. 2006) (finding that the convenience of the parties weighed in favor of transfer where all parties would be required to travel to New York, but defendant would be "relieved of this burden" if the action was transferred).[8]

Plaintiff asserts that any inconvenience to Defendants and their witnesses can be mitigated through remote depositions and testimony (Pl. Opp. 1, 8, 11), but given that this litigation is in its early stages (and, the Court hopes, that the ongoing COVID-19 pandemic is in its later stages), the Court is unable to determine the extent to which the parties and their witnesses will be required to be physically present.  *See Nuss*, 2021 WL 1791593, at *6

---

[7]  Plaintiff has submitted merely an affidavit and screenshot from Google Maps indicating that its premises are 9.4 miles and an approximately thirteen-minute drive from Dulles Airport (MacMull Decl. ¶ 4; *id.*, Ex. 1), as well as the Dulles International Airport Wikipedia page, which states that the airport is located in Fairfax County in Virginia (*id.*, Ex. 2).

[8]  The Court disagrees with Plaintiff that Defendants are attempting to "shift the inconvenience[] to the plaintiff" (Pl. Opp. 7 (quoting *Toy Biz, Inc.* v. *Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998))), given that Plaintiff and its witnesses would be required to travel to either of the potential fora.

(declining "to lend credence to Plaintiff's assertion that the inconveniences of litigating in this District should be disregarded entirely given the *temporary* shift to remote proceedings due to the COVID-19 pandemic" (emphasis in original)).  Accordingly, the Court concludes that the convenience of the parties and witnesses weighs in favor of transfer.

### ii.     The Locus of Operative Facts

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer."  *Everlast*, 928 F. Supp. 2d at 745 (internal quotation marks omitted) (quoting *Smart* v. *Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998)).  Both this factor and the location of material witnesses bear on where the "center of gravity" of the action rests.  *See Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc.* v. *Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co.* v. *Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010).

Defendants argue that their limited sales in this District are not sufficient to render it a locus of operative facts, particularly given their more significant sales in other states.  (Def. Br. 9-10).  Instead, Defendants contend that the District of Kansas is the locus of operative facts, given that the allegedly infringing products were designed and developed in Kansas.  (*Id.* at 10).  Plaintiff responds that the design and development of the infringing products is not an "operative fact," and argues that Defendants' sales and

efforts to facilitate sales in this District provide an "obvious nexus" between Defendants' conduct and this forum. (Pl. Opp. 6).[9]

In his declaration, Mr. Mueller attests that sales of Alpha Clothing's allegedly infringing products have been made in all fifty states. (Mueller Decl. ¶ 5). Of the ten locations where consumers purchased the most Alpha Clothing fitness apparel between January 1, 2019, and December 31, 2020, Brooklyn, New York, ranked eighth. (*Id.* at ¶ 6).[10] Mr. Yarborough, Plaintiff's private investigator, has separately submitted a declaration detailing his purchases of Defendants' apparel from Alpha Clothing's website, as well as Defendants' shipment of the purchased apparel to two New York City addresses. (*See generally* Yarborough Decl.). In connection with these purchases, Mr. Yarborough notes that he was contacted by either Alpha Clothing or an agent regarding a replacement shipment for an order that was lost or stolen. (*Id.* at ¶ 14).

In trademark infringement actions where relevant sales have occurred in multiple districts, courts have reached "disparate results as to where the locus

---

[9]     Plaintiff also argues that courts in this District have found that a defendant "targets" this forum by "selling even a relatively nominal amount of products in the District." (Pl. Opp. 6 (internal quotation marks omitted) (quoting *Pilates, Inc.* v. *Pilates Inst., Inc.*, 891 F. Supp. 175, 182 (S.D.N.Y. 1995))). Plaintiff asserts that Defendants have similarly targeted this forum, rendering it the locus of operative facts. (*Id.*). But in support, Plaintiff refers the Court to cases concerning motions to dismiss for improper venue under 28 U.S.C. § 1406(a), rather than § 1404(a). *See Pilates, Inc.*, 891 F. Supp. at 182-83; *Metro. Opera Ass'n, Inc.* v. *Naxos of Am., Inc.*, No. 98 Civ. 7858 (DAB), 2000 WL 987265, at *2-3 (S.D.N.Y. July 18, 2000). Plaintiff has made clear that this motion is properly understood as pertaining to § 1404(a). (*See* Pl. Opp. 1). Thus, the Court's determination on the locus of operative facts will not be dictated by the discussions in these cases regarding the import of a defendant's "targeting" of a particular forum.

[10]    No other locale in New York is included among the listed ten locations. (*See* Mueller Decl. ¶ 6).

of operative facts lies." *CYI*, 913 F. Supp. 2d at 20. As noted by Plaintiff, some courts have held that "the initial forum is the locus of the operative facts if the allegedly infringing products are sold in that forum." *NBA Props., Inc.* v. *Salvino, Inc.*, No. 99 Civ. 11799 (AGS), 2000 WL 323257, at *4 (S.D.N.Y. Mar. 27, 2000); *see also Kiss My Face Corp.* v. *Bunting*, No. 02 Civ. 2645 (RCC), 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003) ("[I]f the allegedly infringing products are sold within the Southern District of New York, even if sold elsewhere, there exists a sufficient connection with this District."). These courts have deemed arguments regarding "where alleged infringing trademarks were developed, designed, marketed or sold" "simply not germane" to this factor. *ESPN, Inc.*, 581 F. Supp. 2d at 549.

Other courts have found that "mere in-district sales are not sufficient to justify a finding that the locus of operative facts is in the initially chosen forum[.]" *CYI*, 913 F. Supp. 2d at 20 (collecting cases); *see also McGraw-Hill Cos. Inc.* v. *Jones*, No. 12 Civ. 7085 (AJN), 2014 WL 988607, at *6 (S.D.N.Y. Mar. 12, 2014) ("[W]here infringing items are sold in more than one district — and particularly where the products have been sold nationwide — a number of decisions have expressed skepticism that the location of these sales determines the locus of operative facts."); *Invivo Rsch., Inc.* v. *Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 439-40 (S.D.N.Y. 2000) ("Where a party's products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." (internal quotation marks omitted) (quoting *Bionx Implants, Inc.* v. *Biomet, Inc.*,

16

No. 99 Civ. 740 (WHP), 1999 WL 342306, at *4 (S.D.N.Y. May 27, 1999))); *cf.*

*Herbert Ltd. P'ship* v. *Elec. Arts Inc.*, 325 F. Supp. 2d 282, 289 (S.D.N.Y. 2004)

(concluding that sales made in the initial forum made it the locus of operative

facts, but emphasizing that "because, other than sales of the [allegedly

infringing products] ... no other relevant facts appear to have occurred in New

York ... this factor will carry little weight").

In *CYI*, the district court considered these two lines of cases, and deemed

"not persuasive" "those cases holding that the initially chosen forum is the

locus of operative facts if there have been sales in that district, notwithstanding

sales outside the district[.]" *CYI*, 913 F. Supp. 2d at 21. The *CYI* court

observed that where "there are roughly equivalent sales of an allegedly

infringing product in multiple districts, each such district has a roughly

equivalent claim to being the locus of operative facts." *Id.* In particular, the

court expressed concerns that limiting its inquiry to whether sales occurred in

the initially chosen forum would render its assessment of the locus of operative

facts "largely [ ] subsumed by the Plaintiff's choice of forum." *Id.* The court

concluded that the locus of operative facts either "tip[ped] slightly" in favor of

transfer, or was neutral, "depending on how much weight is given to the sales

data provided and the facts relating to the design and development of the

accused products." *Id.* at 22. More recently, the district court in *Enigma*

*Software Group USA, LLC* v. *Malwarebytes Inc.* relied upon the *CYI* court's

decision in declining to find that the location of consumers favored venuing the

case in New York, "where only a small fraction of consumers of the product at

issue bought the product issue in, or are located in, New York." 260 F. Supp. 3d 401, 411 (S.D.N.Y. 2017).

This Court agrees with the reasoning of the *CYI* and *Enigma Software Group* courts. Based on the limited sales data before the Court, there are a number of districts with a "roughly equivalent claim" to being the locus of operative facts, *see CYI*, 913 F. Supp. 2d at 21, particularly in light of Plaintiff's allegations that Defendants' conduct violated the common law of New York and "other states where Alpha Clothing offers its infringing apparel" (Compl. ¶¶ 54, 63). In fact, based on sales data alone, there are a number of districts with a far more compelling claim to being the locus of operative facts than this District (*see* Mueller Decl. ¶ 6), given that the only evidence before the Court of sales in this District is the purchases made by Mr. Yarborough at Plaintiff's instruction (*see generally* Yarborough Decl.).[11] Given Mr. Mueller's representation that the development and design of the allegedly infringing products occurred entirely at Alpha Clothing's headquarters in Overland Park, Kansas (Mueller Decl. ¶ 11), the Court is inclined to find that the locus of operative facts is in the District of Kansas. *See AEC One Stop Grp., Inc.*, 326 F. Supp. 2d at 530 ("The operative facts in infringement cases usually relate to the design, development and production of an infringing product."); *see also CYI*, 913 F. Supp. 2d at 21

_____

[11] As noted earlier, Brooklyn is the only New York locale included among Alpha Clothing's list of ten locations where consumers have purchased the most of its fitness apparel. (*See* Mueller Decl. ¶ 6). The Court is thus not persuaded by Plaintiff's arguments that the "operative fact" is whether Defendants' products created a likelihood of confusion (*see* Pl. Opp. 6-7), as there is little evidence in the record of consumers in this District having purchased or been confused by Defendants' products.

("[T]he design and development of the allegedly infringing products is not wholly irrelevant on the facts of this case."). Moreover, Plaintiff has alleged willful conduct (*see* Compl. ¶¶ 29, 38, 45, 58, 65), and such allegations "will presumably turn, in large part, on facts regarding the design and development of the accused products and packaging and the knowledge of the employees involved in that process." *CYI*, 913 F. Supp. 2d at 21. While the Court recognizes that sales did occur in this District (*see generally* Yarborough Decl.), that consideration is accorded "substantially diminished weight" in light of Defendants' submission that its sales were nationwide. *See McGraw-Hill Cos. Inc.*, 2014 WL 988607, at *6.

The Court thus concludes that the locus of operative facts weighs in favor of transfer. And taking into account both this factor and the location of material witnesses, the Court concludes that the center of gravity of the litigation — "the 'core determination' under § 1404(a)" — would appear to be the District of Kansas. *McGraw-Hill Cos. Inc.*, 2014 WL 988607, at *6 (citation omitted).

### iii.     Trial Efficiency and the Interests of Justice

Plaintiff contends that the Court's familiarity with the claims at issue militates against transfer. (Pl. Opp. 14-15). However, given that this action is still "in its infancy," the Court finds that on balance, there will be no efficiency lost in its transfer to the District of Kansas. *See Steck*, 2015 WL 3767445, at *9 (citation omitted); *YLD Ltd.* v. *Node Firm, LLC*, No. 15 Civ. 855 (JPO), 2016 WL 183564, at *4 (S.D.N.Y. Jan. 14, 2016) ("Given that this case has not

proceeded past a dispositive motion, there is no lost efficiency in transferring the case to a different judge.").

Defendants argue that differences in docket conditions and calendar congestion between the two districts counsel in favor of transfer. (Def. Br. 13). Courts in this District generally "tread[] lightly on the issue of comparing calendar congestion across federal districts[.]" *Steck*, 2015 WL 3767445, at *9 (internal quotation marks omitted) (quoting *Duro Textiles, LLC* v. *Ricci*, No. 14 Civ. 705 (JPO), 2014 WL 641443, at *3 (S.D.N.Y. Feb. 18, 2014)). That said, even if not determinative, "docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight." *Miller* v. *Bombardier Inc.*, No. 93 Civ. 376 (PKL), 1993 WL 378585, at *5 (S.D.N.Y. Sept. 23, 1993). Defendants have submitted statistics indicating that as of last year: (i) there were far fewer cases pending before the district courts in the District of Kansas than before the courts in this District, and (ii) the median time from commencement of the action to trial in the District of Kansas was roughly three months less than in this District. (Def. Br. 13). Some courts have relied upon similar statistics in finding that trial efficiency favors transfer, *see Smart Skins*, 2015 WL 1499843, at *11, while others have declined to decide which district "is busier or more burdened," *see Nuss*, 2021 WL 1791593, at *9.

Here, the Court finds more compelling Defendants' arguments that the interests of justice favor transfer, for much of the reasons discussed above. *See Khankhanian* v. *Khanian,* No. 16 Civ. 8396 (JFK), 2017 WL 1314124, at *7

20

(S.D.N.Y. Apr. 6, 2017) ("Where the 'natural focus' of the case is in the transferee forum, transfer to that district is consistent with the interest of justice." (quoting *Delarosa* v. *Holiday Inn*, No. 99 Civ. 2873 (RWS), 2000 WL 648615, at *5 (S.D.N.Y. May 19, 2000))). Further, as this District is "one of the busiest in the country," and thus "a paradigmatic congested center of litigation," failure to transfer this case would result in the delayed adjudication of other cases more appropriately disposed of this District, which would not serve the interests of justice. *Nuss*, 2021 WL 1791593, at *9 (internal quotation marks omitted) (quoting *Wave Studio, LLC* v. *Gen. Hotel Mgmt. Ltd.*, No. 13 Civ. 9239 (CS), 2017 WL 972117, at *8 (S.D.N.Y. Mar. 10, 2017)). Consequently, both trial efficiency and the interests of justice support transfer.

### b. Neutral Factors

The following factors do not weigh for or against transfer: (i) the availability of process to compel attendance; (ii) the location of relevant documents and relative ease of access to sources of proof; and (iii) the relative means of the parties.

### i. The Availability of Process to Compel Attendance

Under Rule 45 of the Federal Rules of Civil Procedure, a district court generally cannot issue a subpoena that would compel a non-party witness to travel more than 100 miles or out of the state in which the witness resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(A). Where there is no indication that non-party witnesses will refuse to appear, courts will consider the availability of process to compel the attendance of

witnesses a neutral factor.  *See Nuss*, 2021 WL 1791593, at *7.  Neither

Plaintiff nor Defendants have identified any prospective non-party witnesses

who are unwilling to testify.  (*See* Def. Br. 11; Mueller Decl. ¶ 13; Pl.

Opp. 11).[12]  Moreover, even if a witness declines to testify, "deposition

testimony is a viable alternative."  *NBA Props., Inc.*, 2000 WL 323257, at *8

(collecting cases).  This factor thus has little bearing on the Court's

determination.

### ii.      The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

In this "era of electronic documents," where copies of documents can be

easily made and transported, "this factor assumes much less importance than

it did formerly."  *ESPN, Inc.*, 581 F. Supp. 2d at 548.  While Defendants assert

that the documents and "tangible evidence" that they are likely to produce in

this matter are found and most easily accessible in the District of Kansas (Def.

Br. 11), they have not made any "showing that the location of documents would

create a burden absent transfer," *G. Angel Ltd.* v. *Camper & Nicholsons USA,

Inc.*, No. 06 Civ. 3495 (PKL), 2008 WL 351660, at *5 (S.D.N.Y. Feb. 8, 2008).  In

consequence, this factor, too, has little bearing on the Court's determination.

*See Indian Harbor Ins. Co.* v. *Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 401

n.2 (S.D.N.Y. 2005) ("[T]he location of documents is entitled to little weight

unless defendant makes a 'detailed showing [of] the burden it would incur

---

[12]      Defendants submit that their potential witnesses would be burdened by travel to New York, but they have not suggested that, should transfer be denied, their witnesses would be unwilling to testify in this District.  (*See* Mueller Decl. ¶¶ 14-15).

absent transfer.'" (second alteration in *Indian Harbor Ins. Co.*) (quoting *Royal Ins. Co.* v. *Tower Recs., Inc.*, No. 02 Civ. 2612 (PKL), 2002 WL 31385815, at *6 (S.D.N.Y. 2002))).

Given that Defendants, as the "accused infringers," are likely to produce the bulk of the relevant documents and evidence in this case, *CYI*, 913 F. Supp. 2d at 24, the Court is willing to accept that much of this material remains more easily accessible in the District of Kansas. *See Kaufman* v. *Salesforce.com, Inc.*, No. 20 Civ. 6879 (JPC) (SN), 2021 WL 1687378, at *7 (S.D.N.Y. Apr. 29, 2021) ("Because patent infringement cases rely heavily on evidence from the accused infringer, 'the place where the defendant's documents are kept weigh[s] in favor of transfer to that location.'" (quoting *Millennium, L.P.* v. *Hyland Software, Inc.*, No. 03 Civ. 3900 (DC), 2003 WL 22928644, at *4 (S.D.N.Y. Dec. 10, 2003) (alteration added))), *aff'd*, No. 20 Civ. 6879 (JPC) (SN), 2021 WL 2269552 (S.D.N.Y. June 3, 2021). But Defendants have not provided any explanation as to why it would be "so difficult to transport documents to New York." *ESPN, Inc.*, 581 F. Supp. 2d at 549. As such, this factor is neutral. *See id.*; *see also YLD Ltd.*, 2016 WL 183564, at *2 n.1 (observing that this factor favors neither party "given the availability of electronic discovery").

### iii.    The Relative Means of the Parties

"A significant financial disparity between the parties may support or discourage transfer of venue." *YLD Ltd.*, 2016 WL 183564, at *4. However, this factor is "not entitled to great weight" where both parties are corporations. *See*

*Toy Biz, Inc.* v. *Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998).

Defendants argue that litigating in this District will subject them to a significant financial burden, and that Plaintiff is better able to bear the burden of litigating in Kansas. (Def. Br. 8-9, 11; Def. Reply 7). In response, Plaintiff observes that Defendants have offered no substantial evidence suggesting that they would suffer undue financial harm if forced to litigate in this District. (Pl. Opp. 10-11).

"A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Am. Eagle Outfitters, Inc.* v. *Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (citation, internal quotation marks, and alteration omitted). The Court agrees with Plaintiff that Defendants have failed to provide documentation demonstrating the "specific harm or severity of the financial repercussions" they would face were the Court to retain jurisdiction. *Smart Skins LLC*, 2015 WL 1499843, at *9. At best, Defendants have established that Alpha Clothing has smaller gross revenues than does Plaintiff. (*Compare* Mueller Decl. ¶ 12 (attesting that Alpha Clothing's gross revenue in 2019 and 2020 was $1,474,755.92 and $961,640.03, respectively), *with* Def. Br., Ex. 1 (Dun & Bradstreet Company Profile for Alpha Industries, Inc., reporting an annual revenue for 2020 of $57,410,000)). The relative means of the parties "carries little weight, however, when the party arguing to transfer is a corporation." *Smart Skins LLC*, 2015

WL 1499843, at *9 (quoting *Atl. Recording Corp.* v. *Project Playlist, Inc.*, 603 F. Supp. 2d 690, 697 (S.D.N.Y. 2009)).[13]

The Court concludes that Defendants have not made the required showing that it would be "unduly burdensome" to litigate in this District. *YLD Ltd.*, 2016 WL 183564, at *4. This factor will thus be considered neutral.

### c. Factors Disfavoring Transfer

Finally, the following factors weigh against transfer: (i) the forum's familiarity with the governing law, and (ii) Plaintiff's choice of forum.

### i. The Forum's Familiarity with the Governing Law

When undertaking a § 1404(a) analysis of different federal district courts, the putative forum's familiarity with the governing law is "one of the least important factors in determining a motion to transfer." *Posven, C.A.* v. *Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004). Where an action raises questions of federal law, "either forum is equally capable of hearing and deciding those questions." *Berger* v. *Cushman & Wakefield of Pa., Inc.*, No. 12 Civ. 9224 (JPO), 2013 WL 4565256, at *12 (S.D.N.Y. Aug. 28, 2013) (internal quotation marks omitted) (quoting *Dostana Enters. LLC* v. *Fed. Express Corp.*, No. 00 Civ. 747 (RWS), 2000 WL 1170134, at *6 (S.D.N.Y. Aug. 16, 2000)). But to the extent that a case raises state law issues, "then the greater familiarity of

---

[13]    Defendants have provided no documentation regarding the potential financial burden to Mr. Mueller of litigating in this forum. In his declaration, Mr. Mueller represents merely that "[i]f this matter were to remain in New York, it would be a financial and logistical burden for [him]," and, conversely, that this financial burden would be "greatly reduced" were the matter to be transferred to Kansas. (Mueller Decl. ¶¶ 14-15).

the federal court sitting in that forum militates somewhat in favor of transfer." *Dostana Enters. LLC*, 2000 WL 1170134, at *6 (citations omitted).

The Complaint raises federal law claims, as well as common law claims for trademark infringement, unfair competition, and wrongful misappropriation. (*See* Compl. ¶¶ 20-66). Plaintiff has indicated that its common law claims arise under "the State of New York and other states where Alpha Clothing offers its infringing apparel." (*Id.* at ¶¶ 54, 63). While the Court is confident that the District of Kansas can ably interpret and analyze Plaintiff's federal trademark claims, it agrees that Plaintiff's inclusion of state law claims favors this District's retention of the action. Significantly, however, the Complaint suggests that Plaintiff contemplates raising claims in "other states where Alpha Clothing offers its infringing apparel" (*id.*), and Defendants have attested that they have sold such apparel in all fifty states (*see* Mueller Decl. ¶ 5). Moreover, "federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits." *Kwik Goal, Ltd.* v. *Youth Sports Publ'g, Inc.*, No. 06 Civ. 395 (HB), 2006 WL 1517598, at *4 (S.D.N.Y May 31, 2006); *cf. YLD Ltd.*, 2016 WL 183564, at *4 (finding that the transferee forum was capable of applying New York law on unjust enrichment and fraudulent conveyance). Accordingly, this factor weighs, at most, only slightly against transfer.

### ii.      Plaintiff's Choice of Forum

Defendants submit that Plaintiff's choice of forum should be accorded little weight as Plaintiff is neither headquartered nor incorporated in New York

and New York is not the locus of operative facts.  (Def. Br. 12-13).[14]  Plaintiff

concedes that New York is not its home, but argues that its choice of forum

should be assigned substantial deference nonetheless, as its cause of action

arose in New York, and its key witnesses either live in New York or find New

York more convenient than Kansas.  (Pl. Opp. 12-13).

"[P]laintiff's choice of forum is entitled considerable weight, and should

not be disturbed unless the balance of the several factors is strongly in favor of

the defendant."  *City of Pontiac Gen. Emps.' Ret. Sys.* v. *Stryker Corp.*, No. 10

Civ. 376 (RWS), 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010) (internal

quotation marks omitted) (quoting *Orb Factory, Ltd.* v. *Design Sci. Toys, Ltd.*, 6

F. Supp. 2d 203, 210 (S.D.N.Y. 1998)).  However, "the degree of deference given

to a plaintiff's forum choice varies with the circumstances."  *Maverick Fund,*

*L.D.C.* v. *Lender Processing Servs., Inc.*, No. 13 Civ. 5474 (DLC), 2013 WL

6467889, at *2 (S.D.N.Y. Dec. 10, 2013) (internal quotation marks omitted)

(quoting *Iragorri* v. *United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en

banc)).  As relevant here, "[a] plaintiff's choice of forum is accorded less

deference where plaintiff does not reside in the chosen forum and the operative

---

[14]    Defendants also characterize Plaintiff's use of a private investigator who resides in New York as an "attempt to manufacture" its "venue of choice." (Def. Reply 2-3).  To the extent Defendants are insinuating that Plaintiff's decision to file in this District was motivated by forum shopping, the Court recognizes that such motives are a basis for according less deference to Plaintiff's choice of forum.  *See Flood* v. *Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 576 (S.D.N.Y. 2015).  That said, there is no evidence that Plaintiff selected this District "to gain some improper advantage." *Id.* at 576-77.  In any event, for the reasons discussed *infra*, the Court finds that Plaintiff's choice of forum is given little weight.

events did not occur there." *Bibb* v. *AT&T Corp.*, No. 20 Civ. 8590 (CM), 2020 WL 8512863 (S.D.N.Y. Dec. 8, 2020) (citing *Iragorri*, 274 F.3d at 72).

Here, Plaintiff is not at home in this District (*see* Comp. ¶ 1), and only one of its three potential witnesses resides here (*see* Pl. Opp. 7-8). As discussed above, this District's connection to the underlying facts of this case rests largely upon the relatively "small portion of the [Defendants'] sales of the accused product [that] were made here" as well as the fact that "[P]laintiff's counsel has offices in New York." *Neil Bros. Ltd.*, 425 F. Supp. 2d at 333-34. The Court will thus not afford Plaintiff's choice of forum the "significant weight that this factor is typically assigned." *Id.* at 334; *see also Multiwave Sensor Inc.* v. *Sunsight Instruments, LLC*, No. 16 Civ. 1361 (GHW), 2017 WL 1498058, at *8 (S.D.N.Y. Apr. 26, 2017) ("[T]he operative facts of this case 'have few meaningful connections to the plaintiff's chosen forum,' and thus 'the importance of the plaintiff's choice ... measurably diminishes.'" (quoting *Hoadley* v. *MoneyGram Payment Sys.*, No. 08 Civ. 11192 (RJS), 2009 WL 2001327, at *3 (S.D.N.Y. July 9, 2009))).

Put differently, while this factor weighs slightly in favor of retaining the action in this District, it "does not come close to shifting the balance of factors in favor of this [D]istrict." *Everlast*, 928 F. Supp. 2d at 748 (granting motion to transfer venue where "plaintiff's choice of forum is the sole important factor that favors keeping the action in New York").

### d.    Balancing the Factors

In sum, Defendants have demonstrated by clear and convincing evidence that the balance of factors favors transfer.  Based on the above analysis, the factors that courts have deemed of utmost importance to this inquiry — the convenience of the parties and witnesses, the locus of operative facts, and the interests of justice — all favor transfer.  The remaining factors are either neutral or militate only slightly against transfer, and in any event, are accorded little weight.  Accordingly, this case should be decided by the district court in the District of Kansas.

### CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to transfer this case to the District of Kansas.  The Clerk of Court is directed to terminate the motion at docket entry 20.  The Clerk of Court is further directed to transfer this case in its entirety to the United States District Court for the District of Kansas.

SO ORDERED.

Dated:      June 30, 2021
            New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge